**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**DAVID LEONARD, an individual,**

    **Plaintiff,**

v.     Case No.: 8:21-cv-02187

**CB ROOFING CONSTRUCTION, INC,**
a Florida corporation company and
**CHAD BOWMAN, an individual,**

    **Defendants.**
_____/

## COMPLAINT

1. Plaintiff, DAVID LEONARD ("Plaintiff"), an individual, brings the following actions against CB ROOFING CONSTRUCTION, INC., a Florida corporation ("CB"), and CHAD BOWMAN, an individual ("Bowman") (collectively referred to as "Defendants") and states:

## GENERAL ALLEGATIONS

2. This is an action based on a federal question: a claim for failure to pay minimum wage and failure to pay overtime in violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, and supplemental claims under Florida law for unpaid wages and detrimental reliance for which this Court has jurisdiction pursuant to 28 U.S.C. § 1367.

3. Plaintiff resides in Hillsborough County, Florida.

4. Defendant CB is a Florida corporation with its principal place of business in Hillsborough County, Florida.

5. Defendant Bowman is the owner and President of Defendant CB.

6. Upon information and belief, Defendant Bowman usurped the assets of Defendant CB for personal use, engaged in waste of CB assets, and/or wrongfully and distributed CB assets without proper consideration for creditors such as Plaintiff, and as a result, Defendant Bowman should be held personally liable to Plaintiff for damages attributable to Defendant CB.

7. Plaintiff was employed by Defendant CB as a full time roofing sales representative from September 7, 2020, to May 13, 2021, and performed his duties in the Tampa Bay area, within the jurisdiction of this Court.

8. Defendants promised to pay Plaintiff commissions on his sales, but then failed to compensate Plaintiff as agreed, including failure to pay minimum wage for two (2) months, failure to pay overtime, and failure to pay any wages at all for 11 weeks.

9. On June 7, 2021, Plaintiff, via the undersigned, sent a letter to Defendants demanding payment for hours worked. *See Exhibit A attached.*

10. Defendants received the letter and responded that they did not pay him due to allegations that Plaintiff had started his own roofing business, and that he was "sketchy" and "his demeanor was off". *See Exhibit B attached.*

11. Although Defendant Bowman's allegations are untrue, unfounded, improper, and irrelevant to this matter, Defendants' statements also lack merit because payment of wages, including minimum wage and overtime, is not contingent on the quality of an employee's work.

12. Plaintiff relied on Defendants' implied promise that Plaintiff would be compensated in compliance with both federal and Florida law.

13. Plaintiff was a mis-classified as an independent contractor.

14. Any conditions precedent for the claims described below were satisfied.

## COUNT 1:
## VIOLATION OF FAIR LABOR STANDARDS ACT

15. Plaintiff re-alleges paragraphs 1 through 14 of this Complaint.

16. This is a civil action for relief under the Fair Labor Standards Act, as amended, 29 U.S.C. § 216(b) ("FLSA"), and brought to recover minimum wage, liquidated damages, costs, and reasonable attorneys' fees.

17. Defendant CB is a covered enterprise under the FLSA.

18. Defendant Bowman is the owner, shareholder, and officer of Defendant CB with operational control, and he acted directly in the interests of CB in relation to Plaintiff's employment and served as Plaintiff's direct supervisor.

19. As a result, Defendant Bowman meets the FLSA definition of "employer", and he is jointly and severally liable under the FLSA for Plaintiff's damages.

20. At all times relevant to this Complaint, Defendants owned and operated a business engaged in commerce as defined in the FLSA, 29 U.S.C. §§ 203(r) and 203(s).

21. Defendants operated a business that hired employees to sell and install residential roofing projects to consumers, then procured roofing products from multiple out of state vendors including Owens Corning in Ohio, Tamko Building Products in Kansas, and GAF in New Jersey, then installed the roofing products, and processed payments via interstate banks, the internet and/or interstate mail.

22. Upon belief, Defendant CB's annual revenue exceeded $500,000.00.

23. At all times relevant to this Complaint, Defendants had multiple employees who regularly sold, handled, or otherwise worked on materials that had been moved in or produced for commerce.

24. In the alternative, Plaintiff is a covered individual under the FLSA.

25. While working for Defendants, Plaintiff regularly and directly participated in the selection and sale of roofing products from the out of state vendors described above to consumers in the Tampa Bay area.

26. At all times relevant to this Complaint, these duties were Plaintiff's primary job responsibility.

27. From September 2020 until December 2020, Plaintiff worked approximately 50 hours each week, or 10 hours of overtime each week.

28. From January 2021 to May 13, 2021, Plaintiff worked approximately 66 hours per week, or 16 hours of overtime each week.

29. Plaintiff did not earn at least minimum wage from January to May 2021.

30. Plaintiff never received overtime compensation equal to one and one-half of his regular rate of pay for all hours worked in excess of forty (40) hours.

31. Defendants failed to pay Plaintiff any wages at all in April and May 2021.

32. All records, if any, concerning the number of hours and compensation paid to Plaintiff are in the possession and custody of Defendants.

33. Upon information and belief, Defendants have been accused of similar conduct in the past, including an employee lawsuit to recover wages with similar facts.

34. Because Defendants' actions were intentional, willful, and unlawful, their failure to pay Plaintiff constitutes bad faith and Plaintiff is entitled to liquidated damages in an amount equal to minimum wage and overtime owed by Defendants in addition to his regular rate.

35. Plaintiff is owed the following sums:  *See Exhibit C attached*.

    a. Back wages at minimum wage     $5,185.62
    b. Back overtime wages     $3,188.70
    c. Liquidated damages     $8,374.32

36. In total, Defendants owe Plaintiff $16,748.64 in unpaid wages and overtime, in addition to liquidated damages, however, this is subject to increase because recovery of commissions (as pled below) would increase the applicable regular rate and overtime rate. *See Exhibit C attached*.

37. Plaintiff retained the undersigned attorney to represent him in this action, and pursuant to 29 U.S.C. § 216(b), Plaintiff is entitled to recover all reasonable attorneys' fees and costs incurred in this action.

**WHEREFORE,** Plaintiff, DAVID LEONARD demands judgment against Defendants, CB ROOFING CONSTRUCTION, INC., AND CHAD BOWMAN, jointly and severally, for payment of all hours worked, liquidated damages, pre and post judgment interest, reasonable attorneys' fees and costs of suit, and any further relief this Court deems appropriate.

## COUNT II:
## BREACH OF ORAL CONTRACT

38. Plaintiff re-alleges paragraphs 1 through 14 of this Complaint.

39. This is a supplemental claim for breach of contract under Florida law.

40. Jurisdiction is proper for this supplemental claim under 28 U.S.C. § 1367.

41. Defendants promised and/or agreed to pay Plaintiff wages in the form of commissions for all roofing jobs he sold.

42. Plaintiff worked for Defendants as agreed.

43. Defendants breached their contract with Plaintiff by failing to pay Plaintiff the commissions they promised to pay.

44. Plaintiff is owed damages in the form of commissions from Defendants of at least $53,880.00, but this amount is subject to discovery and is likely to increase. *See Exhibit D attached.*

**WHEREFORE,** Plaintiff, DAVID LEONARD, demands judgment against Defendants, CB ROOFING CONSTRUCTION, INC., AND CHAD BOWMAN, jointly and severally, for damages including unpaid commissions, pre and post judgment interest, reasonable attorneys' fees and costs of suit, and any other relief this Court deems appropriate.

## COUNT III:
## DETRIMENTAL RELIANCE

45. Plaintiff re-alleges paragraphs 1 through 14 of this Complaint.

46. This is a supplemental claim for detrimental reliance under Florida law.

47. Jurisdiction is proper for this supplemental claim under 28 U.S.C. § 1367.

48. Defendants promised and/or agreed to pay Plaintiff commissions for all roofing jobs he sold.

49. Based on Defendants' promise, Plaintiff worked for Defendants as agreed.

50. Defendants failed to pay Plaintiff the commissions he was promised.

51. Plaintiff is owed damages in the form of commissions from Defendants of at least $53,880.00, but this amount is subject to discovery and is likely to increase. *See Exhibit D* attached.

52. Plaintiff relied on Defendants' promises to his detriment and it would be unjust for Defendants to withhold commissions after enjoying the efforts and proceeds of Plaintiff's work.

53.     Plaintiff would not have worked for Defendants but for their promise to pay commissions, and Plaintiff would not have worked for Defendant in exchange for the wages paid by Defendant to date and/or Plaintiff would not have worked for Defendant in exchange for only minimum wage.

**WHEREFORE,** Plaintiff, DAVID LEONARD, demands judgment against Defendants, CB ROOFING CONSTRUCTION, INC., AND CHAD BOWMAN, jointly and severally, for damages including unpaid commissions, pre and post judgment interest, reasonable attorneys' fees and costs of suit, and any other relief this Court deems appropriate.

### COUNT IV:
### UNPAID WAGES UNDER FLORIDA STATUTE 448.08

54.     Plaintiff re-alleges paragraphs 1 to 14 and 37 to 52 of this Complaint

55.     This is a supplemental claim for unpaid wages under Florida law.

56.     Jurisdiction is proper for this supplemental claim under 28 U.S.C. § 1367.

57.     Because Florida law construes commissions as wages, Plaintiff is entitled to at least $53,880.00 in commissions from Defendants, but this amount is subject to discovery and is likely to increase.  *See Exhibit D attached.*

58.     Florida Statute § 448.08 provides that an employee may sue his employer for unpaid wages, and if he is successful, the employee is entitled to costs of the action in addition to reasonable attorneys' fees.

59.     Plaintiff asserts the Florida law claims as a companion to the FLSA violation because while the FLSA provides for recovery of minimum wage, Florida law permits recovery of Plaintiff's commissions.

60.     Count I of this Complaint is an action for violation of the FLSA and Count II of this Complaint is an action for detrimental reliance on promise to pay wages, both of which constitute the civil actions for unpaid wages required by Florida Statute § 448.08.

61.     Plaintiff retained the undersigned attorney to represent him in this action and is entitled to recover all reasonable attorneys' fees and costs incurred in this action.

**WHEREFORE,** Plaintiff, DAVID LEONARD, demands judgment against Defendants, CB ROOFING CONSTRUCTION, INC., AND CHAD BOWMAN, jointly and severally, for damages including unpaid commissions, pre and post judgment interest, reasonable attorneys' fees and costs of suit, and any other relief this Court deems appropriate.

Respectfully submitted on September 15, 2021.

/s/ Kimberly Isner Monticello
KIMBERLY ISNER MONTICELLO
Florida Bar No.: 056069
Trial Counsel
Monticello Law Firm, PA.
2202 N. Westshore Blvd., Suite 200
Tampa, Florida 33607
Telephone: (813) 367-3677
Facsimile: (855) 767-5734
kim@monticellolawfirm.com
Attorney for Plaintiff, David Leonard



June 7, 2021

**Sent USPS Priority Mail to:**

Chad Bowman
President and Registered Agent
CB Roofing Construction, Inc.
3422 Lithia Pinecrest Road, # 202
Valrico, Florida 33596

### DEMAND FOR PAYMENT OF WAGES AND COMMISSIONS

Dear Mr. Bowman:

    I have the pleasure of representing David Leonard ("Leonard") relating to wages and commissions earned by Leonard that you failed to pay when he worked for your company, CB Roofing Construction, Inc. ("CB"). This letter describes Leonard's claims for breach of contract and Florida's "Unpaid Wage Statute", the Fair Labor Standards Act ("FLSA"), a claim for defamation *per se* under Florida law, and this letter demands payment for the unpaid wages and commissions. We have sent this letter to you via US Mail, so the legal presumption of receipt will apply. If you are represented by counsel, please forward this letter to your attorney.

    As background, I understand that Leonard began working for CB on September 7, 2020, and his pay was to be in the form of commissions on sales of residential roofing projects. Your agreement with Leonard was that he would earn a 12% commission on any insurance paid roofing job that he sold, and 10% commission on any "retail" or customer paid roofing job that he sold. According to Leonard, although you paid him timely when he first began working for CB, he was always required to keep track of his own sales history. It is my understanding that in addition to CB's failure to keep accurate records of the commissions owed to Leonard, in violation of federal law, Leonard never received a commission reconciliation report, Leonard never knew for which jobs he was receiving pay, and the timing of his commission payments was inconsistent and sporadic.

    Even though Leonard was apparently a very productive member of your team, CB terminated him on or about May 13, 2021. I have personally reviewed a "screen shot" of a CB revenue tracking tool, and from December 2020 to February 2021, Leonard's roofing job sales totaled $219,445.00. Leonard ranked 3 out of 10 CB salespersons. In fact, Leonard was your top salesperson in February 2021, with sales of $60,599.00. Despite this sales performance, your manager Brad informed Leonard he was being terminated because of allegations regarding Leonard's wrongful solicitation of CB clients. I have attached a text conversation between Brad and Leonard regarding Brad's accusation. The allegations were vague, absurd, without merit whatsoever, and seem ridiculous in light of Leonard's sales performance. Brad's statements even support a claim for defamation *per se* under Florida law. Even if the solicitation allegations were true, CB would still not be entitled to withhold payment of wages. It is more likely that CB terminated Leonard because he consistently complained that his commissions were not accurately calculated and/or paid which would constitute wrongful retaliation under the FLSA.

    Quite simply, you knew or should have known that you had an obligation to compensate Leonard for work he performed for CB in reliance on your promises to pay him wages. In addition, we believe that after Leonard was terminated, someone changed information in CB's software system to "shift" sales from Leonard to another employee. Your actions are especially surprising considering that your website states that your core values include the following:

> *Respect and Value – The Individual*
> *Integrity – Be Open, Honest, Respectful, Ethical, Fair and Genuine*

**EXHIBIT A TO COMPLAINT**

2202 N. Westshore Boulevard, Suite 200, Tampa, Florida 33607 • P: 813-367-3677 • F: 813-767-5734
kmonticello@monticellolawfirm.com • www.monticellolawfirm.com

You have obviously not conducted business in accordance with these standards. It is unlawful for an employer to require an individual to work without pay. The following information describes some, but not all, of the legal claims available to Leonard at this time.

### A.     *Failure to Pay Commissions*

CB failed to pay Leonard for the jobs that he sold. You agreed to compensate Leonard for commissions earned on roof sales, and then you failed to pay him commissions that he earned. Unpaid commissions are considered wages under Florida law. *See Gulf Solar, Inc. v. Westfall,* 447 So.2d 363, 367 (Fla. 2d DCA 1984); *D.G.D., Inc. v. Berkowitz,* 605 So.2d 496, 498 (Fla. 3d DCA 1992). If we are unable to resolve this matter via confidential settlement negotiations, and we are forced to file a lawsuit, a court will require CB to reimburse Leonard for his reasonable attorney's fees, and costs of the lawsuit if we are successful in showing that Leonard was not paid earned commissions. *Hingson v. MMI of Florida, Inc.,* 8 So. 3d 398, 401 (Fla. 2d DCA 2009).

Shockingly, the last pay Leonard even received from CB was back in February. He received $1,429.80 on February 2, 2021, and $800.00 on February 19, 2021. The attached chart contains a description of some of the outstanding commissions due to Leonard. Please note that the attached chart contains ONLY roof jobs that have already been installed, or that are under contract with deposits paid, and waiting for installation. The total due to Leonard for these jobs is at least $53,880.00. Please note that this number is subject to increase if we discovery that you wrongfully withheld commissions, miscalculated commissions, and/or wrongfully assigned commissions owed to Leonard to another sales employee.

### B.     *Failure to Pay Minimum Wage*

If you attempt to argue that Leonard is not entitled to commissions, or that the commissions were paid to another salesperson, as threatened in Brad's text exchanges, then we intend to file a companion claim for violation of the Fair Labor Standards Act ("FLSA"). Under the FLSA, employers must compensate employees at least minimum wage for all hours worked in addition to overtime at a rate of one- and one-half times their hourly rate for all hours worked over forty (40) in a single workweek. Under the FLSA, it is also unlawful for an employer to terminate an employee because the employee complained about not receiving wages due to him. Of course, as noted above, we believe that CB terminated Leonard because he complained about not receiving pay.

According to Leonard, at the beginning of his employment with CB, he usually worked 50 hours per week. Then, as his sales increased beginning in January 2021, he worked approximately 66 hours per week. For 2021, the Florida minimum wage was $8.65 per hour, and the overtime rate would be $12.98. As a result, Leonard would be entitled to $346.00 per week in regular pay, and $176.00 in overtime pay, for a total of $522.00 per week. At the very least, you have not paid Leonard since February 2021, and he was terminated on May 13, 2021, which means that Leonard received no pay whatsoever for at least 11 weeks of work. As a result, you would owe Leonard a minimum of $5,742.00 in back pay. In addition, an FLSA plaintiff is entitled to liquidated damages of an amount equal to back wages due, when the employer knew or should have known that it had violated the FLSA. If we are successful in showing that failed to pay Leonard any wages, you will be liable to Leonard for payment of liquidated damages of an additional $5,742.00, a total of $11,484.00, in addition to reimbursement of Leonard's attorney's fees and costs. Of course, we would also assert that CB promised to pay Leonard more than minimum wage via a breach of contract claim.

### C.     *Demand to Cease and Desist Libel*

As shown in the text exchanges, Brad told Leonard that he suspected that Leonard had started his own business and was intentionally diverting clients from CB to the new company. Brad failed to identify the client who made these allegations, most likely because the allegations re completely absurd. According to Leonard, someone posted an online review that said, "a salesperson was bragging about pocketing client's money by charging the client more money than the actual job estimate". We believe that Brad's allegations were related to that false review. We do not believe that any client reported such conduct by Leonard. We believe the comments were solely intended to disparage Leonard's reputation because he demanded wages.

**EXHIBIT A TO COMPLAINT**

If the allegations were communicated to any other person, this would support a claim for defamation *per se* under Florida law. And, because Brad is your manager, you are liable for his conduct. A claim for libel and/or defamation *per se* is available when a person makes charges that tend to injure another in his trade or profession and may subject him to ridicule, contempt or disgrace. *See Boyles v. Mid-Florida Television Corp.*, 431, So.2d 627 (Fla. 5th DCA 1983) (*citing Richard v. Gray*, 62 So.2d 597 (Fla. 1953)).

Clearly, Brad's allegations that Leonard intentionally mislead homeowners regarding the identity of his employer, and allegations that Leonard stole clients would injure his reputation, and such false allegations would be libel per se. In a suit for libel, although no special damage is proven, if the publication is malicious in character, a plaintiff may recover punitive damages to serve as a deterrent to others inclined to commit a similar offense. *Saunders Hardware Five & Ten, Inc. v. Low*, 307 So. 2d 893, 894 (Fla. 3rd DCA 1974).

D. *Duty to Preserve Evidence*

In light of the allegations described in this letter, you are on notice that under both federal and Florida law, **you have a duty to preserve evidence**. This letter details only some of these duties, and this is a continuing obligation. You are obligated to retain, and refrain from altering, deleting or destroying, any and all objects, documents, and/or data, in any form, that may be relevant to potential litigation in this matter. In order to avoid any problems with evidence or retention of relevant information, we request that you immediately override any document or data destruction procedure or policy you currently have in place.

You should review your duty to preserve and protect electronic and non-electronic documents and other evidence. For example, Rule 1.350(a) of the Florida Rules of Civil Procedure defines the term "document" broadly and permits discovery of electronically stored information. As a result, your obligation is not only to preserve relevant paper documents, but to also preserve any and all relevant electronic records and data. Such records and data include, but are not limited to, e-mail and other electronic communications, text messages, calendars, telephone logs, text files, HTML files, digital notes, instant messages, as well as network access information stored in the following: laptops, personal computers, internet data, handheld wireless devices, and voice mail. This obligation to preserve evidence includes information that is in your possession, custody or control, including items in the possession of third parties under your control. Any hard copies of the above-referenced information must be retained in addition to the electronic versions.

In addition, as another example, Rule 1.280(b)(1), Florida Rules of Civil Procedure, describes the scope of information that can be obtained during discovery and states:

> Parties may obtain discovery regarding any matter, not privileged, that is relevant to the subject matter of the pending action, whether it relates to the claim or defense of the party seeking discovery or the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

Again, you have a legal obligation to follow these requirements to retain records and information about electronic data. The Florida Rules of Civil Procedure provide protection against any defendant who destroys, damages, or misplaces evidence. *Martino v. Wal-Mart Stores, Inc.*, 908 So.2d 342 (Fla. 2005).

Nothing contained in or omitted from this letter constitutes a waiver of rights, claims, or other legal action permissible under the law, nor does it constitute an admission of any kind. In addition, in order to assure compliance with your obligation to preserve all evidence, please forward this information to all persons and/or entities with custodial responsibility for any information that may be discoverable should this matter proceed to litigation. Also, we encourage you to seek legal counsel as soon as possible.

### E.  Conclusion

Please understand that Leonard does not desire to engage in litigation against CB Roofing Construction, but he is unwilling to walk away without recovering the wages owed to him. Because CB's owners and managers likely know that they must pay their employees for their work, we are confident that we can resolve this matter quickly without the need for legal action.

*For settlement purposes only, and in a good faith effort to resolve this matter quickly, Leonard is willing to waive damages related to his FLSA and defamation claim, and to forego his entitlement to attorney's fees if you tender payment for his **unpaid commissions in the amount of $53,880.00 on or before, Monday, June 21, 2021**. Please note that this offer of compromise is contingent on you making payment via wire transfer and on time.*

If you do not take advantage of this settlement offer, we will immediately file a lawsuit on June 22, 2021, seeking any and all remedies under federal and Florida law, including but not limited to, damages related to CB's failure to pay minimum wage, CB's breach of its contract for wages with Leonard, unjust enrichment, wrongful retaliation, defamation *per se,* and negligent supervision, in addition to reimbursement of Leonard's attorney's fees and costs of suit.

Because these claims are very serious, I encourage you to seek legal counsel as soon as possible. Please direct any and all communication intended for David Leonard solely to my attention. If you or your attorney have any questions, or wish to discuss this matter further, please do not hesitate to contact me at (813) 367-3677 or via email to kim@monticellolawfirm.com.

Sincerely,

*[signature]*

Kimberly Isner Monticello
Monticello Law Firm, P.A.

cc:   David Leonard

EXHIBIT A TO COMPLAINT

**From:** Chad Bowman cbowman@cbroofingconstruction.com
**Subject:** Re: David Leonard Case
**Date:** July 1, 2021 at 3:53 PM
**To:** kmonticello@monticellolawfirm.com



Good Afternoon Kim

I wanted to reach out to you since we seem to be missing each other on the phone.  I can provide some evidence of the false statements David is making.  I have personally talked to and recorded one of the clients that David had signed a contract with who stated he was starting his own company and wanted to transfer them and other clients to his new company.  We had two clients come into the office with similar stories saying  they thought it was sketchy and his demeanor was off.  We told any clients that he had worked with that if they felt like things were amiss we would let them out of the contract with no penalties.  We have several sales reps who said David had approached them to go and work for him at his new company.  David was never hired as an employee.  All our salesmen are independent reps who set their own hours.  We use a calendar system that lets the reps show us when they are available to run company generated leads.  If they are available for a lead with a client we do set up that schedule for them.  While he represented our company we are aware of online questionable activity calling out a posible transgender person and group making commits that are not nice.  We had to publicly apologize and place David on notice that if it continued he would not be allowed to represent us and we would not be able to set leads for him.  We had to ask David not to come to our office when there was not a male person present.  He learned our office patterns quickly and was very persistent on making advances with one of our young ladies in the office after she had asked him to stop several times.  He went as far to figure out our keypad codes which we had to change so he would not let himself in while the girls were in the office alone.   Despite these early warning sings we gave hime the benefit of the doubt and worked with him. Our sales manager went out of his way to help him as we felt sorry for him and saw the good in him.  Our sales manager and I had worked with him on several jobs getting the vergbiage correct as he had informed us of a learning disability, I do not recall what he actually said he had but we were fine stepping in and giving him the help he needed to succeed.  We let all reps who sell for us know that as long as they work and sell for us we will pay them commissions and if they leave as long as its on good terms and they have not done harm to the company of the clients we will continue to pay them.  Most of the commissioned companies in the area do not pay commissions after a rep leaves.  We still have reps who have worked for us in the past who will bring us jobs because they trust we will pay them.  We only allow this if the current company is ok with us running the job.  This usually happens if the old reps current company does not do the kind of work the scope calls for or its out of their service area.  Please let me know what evidence you would like?  I can try and email it or come into your office with my computer as all our documents are in the cloud.  All commissions for each job our sales manager does calculate and shares with sales reps especially if there are deductions off the base commission.
Thank you
Chad Bowman
CB Roofing Construction inc.
(813) 569-6930 o
(615) 534-8740 f

On Jun 15, 2021, at 2:06 PM, Chad Bowman <cbowman@cbroofingconstruction.com> wrote:

Dear Kimberly Monticello

I received your letter yesterday the 14th of June.  It was sent to our mailing address that we only check once a week.  I have briefly read though the demand letter and will need more time to go through it as you client has made many accusations some of which I am not aware of and some I have some knowledge of.  I am leaving out of town this afternoon and will not be back in the office until the 25th of June.  I am requesting that you please extend your time frame to file a lawsuit until you and I can speak and I have time to get you the information you will need to advise your client as to the best plan of action.  We do not have anything to hide and I will open all our books and documents for you to review.

Thank you
Chad Bowman
CB Roofing Construction inc.
(813) 569-6930 o
(615) 534-8740 f

**EXHIBIT B TO COMPLAINT**

**EXHIBIT C TO COMPLAINT**

|  | October 2020 (4 weeks) | November 2020 (5 weeks) | December 2020 (4 weeks) | January 2021 (4 weeks) | February 2021 (5 weeks) | March 2021 (4 weeks) | April 2021 (4 weeks) | May 2021 (3 weeks) | Total |
|---|---|---|---|---|---|---|---|---|---|
| Regular Hours Worked | 160 | 200 | 160 | 160 | 200 | 160 | 160 | 120 | 1320 |
| Overtime Hours Worked | 40 | 50 | 40 | 104 | 130 | 104 | 104 | 78 | 650 |
| Total Wages Earned | 2000.00 | 5072.20 | 2294.70 | 2115.30 | 2229.80 | 1890.80 | 0 | 0 | 13487.50 |
| Regular Rate | 10.00 | 20.29 | 11.47 | 8.01 | 6.75 | 7.16 | 0 | 0 | Varies |
| Back Minimum Wage Due | 0.00 | 0.00 | 0.00 | 168.96 | 627.00 | 393.36 | 2283.60 | 1712.70 | 5185.62 |
| Back Overtime Due* | 200.00 | 507.50 | 229.60 | 450.32 | 562.90 | 450.32 | 450.32 | 337.74 | 3188.70 |
| Liquidated Damages | 200.00 | 507.50 | 229.60 | 619.28 | 1189.90 | 843.68 | 2733.92 | 2050.44 | 8374.32 |

* This number is subject to increase with any commissions due to Plaintiff (which must be included in the regular rate)

**EXHIBIT D TO COMPLAINT**

| **COMMISSIONS DUE TO PLAINTIFF** | | |
|---|---|---|
| **CLIENT NAME** | **CLIENT ADDRESS** | **AMOUNT DUE** |
| Jerome Castronoca | Brandon 33511 | $2,000.00 |
| Isa Marie Bosques | Tampa 33612 | $1,800.00 |
| Quingyou LI | Tampa 33647 | $2,000.00 |
| Ajuluchukwu Enemchukwu | Riverview 33579 | $1,800.00 |
| Margaret Schmidt | St Petersburg 33710 | $500.00 |
| Christopher Atlas | Brandon 33510 | $850.00 |
| Kai and Robert Yaniz | Tampa 33613 | $1,400.00 |
| Ramonita Calderon | Riverview 33578 | $1,200.00 |
| Gangodhararao Chapalamadugu | Clearwater 33762 | $1,800.00 |
| Linda Brownell | Ruskin 33570 | $1,400.00 |
| Alan Fosco | Tampa 33613 | $2,500.00 |
| Billy Idol | Bradenton | $2,400.00 |
| Bonnie Losh | Lakeland 33805 | $1,800.00 |
| Garth Arevalo | Tampa 33614 | $1,500.00 |
| Niurka Calvache | Tampa 33614 | $2,880.00 |
| Charles Ricci | Brandon 33511 | $1,920.00 |
| Mark Mangus | Bradenton 34203 | $2,160.00 |
| Chris Bevington | Tampa 33629 | $800.00 |

**EXHIBIT D TO COMPLAINT**

| | | |
|---|---|---|
| Tyler Foster | Lakeland 33803 | $650.00 |
| James Talboom | Riverview 33569 | $1,800.00 |
| Jim Ferguson | Lakeland 33809 | $800.00 |
| Don and Jeanne Coleman | Clearwater 33755 | $2,700.00 |
| James Blair | Seminole 33777 | $2,280.00 |
| Steven Mcglinchey | Polk City 33868 | $700.00 |
| Kawan Afree | Wesley Chapel 33543 | $2,280.00 |
| John Hargis | Valrico 33594 | $1,000.00 |
| Eric Bristow | Lithia 33547 | $1,100.00 |
| Joseph Towns | Lakeland 33812 | $1,300.00 |
| Bernard Rupp | Tampa 33624 | $1,300.00 |
| Joanne Mann | Apollo Beach 33572 | $700.00 |
| Sheryl Norr | Sun City Center .33573 | $1,680.00 |
| Javaris and Trenice Lucas | Tampa 33619 | $2,000.00 |
| Douglas Dillard | Polk City 33868 | $2,880.00 |
| David and Barbra Denney | Ruskin 33570 | $600.00 |
| | | |
| **TOTAL (SUBJECT TO DISCOVERY)** | | **$53,880.00** |